BRUCE A. COLBATH (Pro Hac Vice)
bruce.colbath@weil.com
GAYLE E. ROSENSTEIN (Bar No. 237975)
gayle.rosenstein@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

KENNETH L. STEINTHAL (Pro Hac Vice)
kenneth.steinthal@weil.com
GREGORY D. HULL (Bar No. 57367)
greg.hull@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone:  (650) 802-3000
Facsimile:  (650) 802-3100

Attorneys for Defendants
AIRBORNE, INC., AIRBORNE HEALTH,
INC., KNIGHT-MCDOWELL LABS

GARY W. NEVERS (Bar No. 82512)
gwnevers@npmp.com
NEVERS, PALAZZO, MADDUX &
PACKARD, PLC
31248 Oak Crest Drive, Suite 100
Westlake Village, CA 91361
Telephone: (818) 879-9700
Facsimile: (818) 879-9680

Attorneys for Defendants
THOMAS RIDER MCDOWELL AND
VICTORIA KNIGHT-MCDOWELL

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| DAVID WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AIRBORNE, INC., AIRBORNE HEALTH, INC., KNIGHT-MCDOWELL LABS, THOMAS RIDER MCDOWELL, VICTORIA KNIGHT-MCDOWELL, and DOES 1–100, inclusive,<br><br>Defendants. | **Case No. EDCV07-770 VAP (OPx)**<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF FINAL SETTLEMENT APPROVAL**<br><br>**DATE:**  JUNE 16, 2008<br>**TIME:**   10:00 a.m.<br><br>**JUDGE**: Hon. Virginia A. Phillips |

# TABLE OF CONTENTS

**Page**

I.   BACKGROUND. ...........................................................................................1

　　　1.   Introduction. .............................................................................. 1

　　　2.   Procedural History. .................................................................... 2

II.   THE STANDARDS FOR CLASS SETTLEMENT APPROVAL. ....................................3

III.   THE SETTLEMENT SATISFIES THESE APPROVAL STANDARDS. ........................4

　　　1.   Arms' Length Negotiations. ....................................................... 4

　　　2.   Risks And Results. ...................................................................... 5

　　　3.   State Of Discovery. ..................................................................... 8

　　　4.   Class Reaction. ........................................................................... 8

IV.   NONE OF THE OBJECTIONS RAISE GROUNDS TO DENY FINAL APPROVAL OF THE SETTLEMENT. .............................................................10

　　　1.   The Objectors Do Not Establish That There Is Anything Unfair, Inappropriate, or Unreasonable About the Settlement. .................................................................................. 10

　　　　　a.   The Objection of Kervin M. Walsh Does Not Raise Grounds Sufficient to Deny Final Approval. ................. 10

　　　　　b.   Joel Shapiro Does Not Have Standing to Object and, Even if He Did, the Objection Does Not Otherwise Raise Grounds Sufficient to Deny Final Approval. .................................................................. 10

　　　2.   None of the Objections Raise Grounds Sufficient to Deny Final Approval. ...................................................................... 11

　　　　　a.   Class Notice is Adequate. .............................................. 11

　　　　　b.   The Claims Process is Not Arbitrary or Unfair. ............. 16

　　　　　c.   The Claims Procedure is Not Arbitrary or Unfair. ......... 16

　　　　　d.   The Distribution of Unclaimed Funds to Charities is Fair. .......................................................................... 17

　　　　　e.   The Settlement Fund is Adequate. .................................. 18

　　　　　f.   The Settlement is Sufficient with Respect to Equitable Relief. ........................................................... 18

　　　　　g.   The Distribution Plan is Fair and Reasonable. ............... 20

1

## TABLE OF CONTENTS

2

**Page**

3

V.      CONCLUSION.............................................................................................21

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

### CASES

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988),
*aff'd*, 889 F.2d 21 (11th Cir. 1990) ............................................................3

*Boyd v. Bechtel Corp.*,
485 F.Supp. 610 (N.D. Cal. 1979)..........................................................8

*Churchill Vill., L.C. v. GE*,
361 F.3d 566 (9th Cir. 2004)...............................................................10

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir.),
*cert. denied*, 506 U.S. 953 (1992) ....................................................3, 6

*Elkins v. Equitable Life Ins. Co. of Iowa*,
No. Civ.A. 96-296-CIV-T-17B,
1998 WL 133741 (M.D. Fla. Jan. 27, 1998)....................................13

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980),
*aff'd*, 661 F.2d 939 (9th Cir. 1981) ....................................................4

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)...................................................passim

*In re Aetna Inc. Sees. Litig.*,
2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001) .....................15

*In re Agent Orange*,
818 F.2d 145 (2d Cir. 1987).............................................................14

*In re Am. Family Enters.*,
256 B.R. 377, 417 (D. N.J. 2000)...................................................13

*In re Austrian & German Bank Holocaust Litig.*,
80 F.Supp.2d 164 (S.D.N.Y. 2000),
*affd*, 236 F.3d 78 (2d Cir. 2001) .......................................................8

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003) ........................................................12

*In re Lorazepam & Clorazepate Antitrust Litig.*,
205 F.R.D. 369 (D. D.C. 2002) .......................................................13

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000).....................................................3, 4, 5

*In re Omnivision Techs.*,
2007 U.S. Dist. LEXIS 95615 (N.D. Cal., Dec. 6, 2007)............10

*In re Pacific Enterprises Securities Litig.*,
47 F.3d 373 (9th Cir. 1995)................................................................3

*In re Toys R Us Antitrust Litigation*,
191 F.R.D. 347 (E.D.N.Y. 2000) ...................................................14

*Kirkorian v. Borelli*,
695 F. Supp. 446 (N.D. Cal. 1988).................................................3

*Laskey v. International Union, UAW*,
638 F.2d 954 (6th Cir. 1981)............................................................8

*Linney v. Cellular Alaska Partnership*,
151 F.3d 1234 (9th Cir. 1998).......................................................5, 8

*Lobatz v. U.S. West Cellular of l., Inc.*,
222 F.3d 1142 (9th Cir. 2000)........................................................11

*Marisol A. ex rel. Forbes v. Giuliani*,
185 F.R.D. 152 (S.D.N.Y. 1999),
*aff'd*, 218 F.3d 132 (2d Cir. 2000)....................................................8

# TABLE OF AUTHORITIES
### (continued)

Page

*Nat'l Rural Telecoms. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................9

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
   688 F.2d 615, 625 (9th Cir. 1982),
   *cert. denied*, 459 U.S. 1217 (1983) ..........................................................3, 4, 6

*Rodriguez v. West Publ. Corp.*,
   2007 U.S. Dist. LEXIS 74776 (C.D. Cal. Sept. 10, 2007) ....................15, 18

*Sears, Roebuck & Co. v. FTC*,
   676 F.2d 385 (9th Cir. 1982)........................................................................19

*Sollenbarger v. Mm. States Tel. & Tel. Co.*,
   121 F.R.D. 417 (D. N.M. 1988) ...................................................................15

*State of New York by Vacco v. Reebok International, Ltd.*,
   903 F. Supp. 532 (S.D.N.Y. 1995) ........................................................14, 18

*Stoetzner v. U.S. Steel Corp.*,
   897 F.2d 115 (3d Cir. 1990)...........................................................................8

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993),
   *cert. denied*, 512 U.S. 1220 (1994) ....................................................3, 4, 6, 8

1

# TABLE OF AUTHORITIES
**(continued)**

2
**Page**

3
**STATUTES**

Fed. R. Civ. P. 23...............................................................................................3, 13

4

5
**OTHER AUTHORITIES**

4 H. Newberg & A. Conte,

6
  *Newberg on Class Actions* § 11.41 (4th ed. 2002)....................................4, 8

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.      BACKGROUND**

2         **1.      Introduction**

3              Defendants Airborne, Inc., Airborne Health, Inc., Knight-McDowell

4    Labs, Victoria Knight-McDowell and Thomas McDowell (collectively, the

5    Defendants) respectfully submit this Memorandum of Law in support of Final

6    Settlement Approval.

7              Defendants have consistently denied and continue to deny the factual

8    allegations in plaintiff David Wilson's Second Amended Complaint, which include

9    allegations of false advertising and unfair business practices in connection with the

10   marketing and sale of Airborne Products. Nevertheless, the Defendants have

11   decided to settle this protracted and expensive litigation. As the Defendants

12   demonstrate below, the proposed settlement — which calls for them to deposit a

13   minimum of $23.25 million in a non-reversionary settlement fund to reimburse

14   eligible Class Members and to implement equitable relief as specified in an

15   anticipated settlement with the Federal Trade Commission ("FTC")[1] — "is

16   fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d

17   1011, 1026 (9th Cir. 1998). ("*Hanlon*").

18              The $23.25 million in consumer redress and the equitable relief

19   provided in the tentative agreement with the FTC is as much, if not more, than the

20   Defendants should reasonably be asked to provide in settlement of the claims

21   alleged in this case, given their numerous defenses on both the merits and the

22   propriety of class certification of the asserted claims. While the Defendants believe

23   that they would likely prevail, they have concluded that it is desirable that this

24   action be settled in the manner and on the terms and conditions set forth in the

25   Settlement Agreement in order to avoid the expense, inconvenience, uncertainty,

26   _____

27   [1] Defendants are close to consummating an agreement with the FTC that would provide equitable relief — as contemplated in the Settlement Agreement — and potentially other relief. If consummated, the settlement must be approved by the FTC Commissioners and entered by a court before it can be considered final.

28

---

DEFENDANTS' MEMO OF LAW IN SUPPORT          1          Case No. EDCV07-770 VAP (OPx)
OF FINAL SETTLEMENT APPROVAL

1  and burden of further protracted legal proceedings. Class Counsel similarly

2  recognizes the uncertainty, as well as the substantial amounts of time and expense,

3  that would be involved with taking this action to trial and through appeal. Plaintiff

4  and Class Counsel have determined, therefore, that the settlement is in the best

5  interest of the Class Members.

6        In light of the substantial benefits conferred upon the Class Members

7  and the thoroughness of class notice, the objections proffered do not provide any

8  ground for denying settlement approval. The Court, therefore, should approve the

9  settlement.

10      **2.**    **Procedural History**

11        The record — through the extensive briefing and hearing conducted

12  relating to the Preliminary Approval of the Settlement — is incorporated herein by

13  reference and reflects the procedural history of the case through Preliminary

14  Approval. Here, the Defendants will describe the events that have taken place since

15  then.

16        On November 29, 2007, Judge Phillips granted preliminary approval

17  of the parties' proposed settlement, preliminarily certifying the Settlement Class,

18  and further ordering a schedule for the settlement approval process. Pursuant to that

19  schedule, a handful of objectors filed papers postmarked on or before the May 19,

20  2008 deadline,[2]  most objecting to the settlement because they did not believe that

---

21  [2] Declaration of Eric C. Hudgens, filed by the Plaintiff on May 30, 2008 ("Hudgens Decl.") ¶ 18;

22  *see* objections, Exh. E–I to Hudgens Decl. Two of these objections and requests to appear at the Fairness Hearing were filed by Denise Fairbank and Falicia Estep. *See* Fairbank Objection, Exh.

23  H to Hudgens Decl., and Estep Objection, Exh. I to Hudgens Decl. These objections, however, were rejected by this Court because they were not e-filed per G.O. 08-02. *See* Order Rejecting

24  Objections (May 22, 2008).The objections raised by these parties relate (1) to the timely and officious processing of claims and (2) to several issues relating to Class Counsel and their fees.

25  The Defendants assert that the former objection is without merit and that the claims administration is being conducted in a responsible and professional manner. *See* Hudgens Decl.

26  ¶ 20–21. The Defendants have agreed not to oppose a request from Class Counsel for fees and expenses up to 25 percent of the Settlement Fund (after deduction of tax payments) plus a *pro*

27  *rata* share of all interest, dividends, and other distributions and payments accrued by the Settlement Fund; the Settlement Fund to which Class Counsel may apply for a fee award does not

28  include any potential additional monies obtained as may be payable by Defendants as a consequence of any settlement with the FTC. The Defendants have never agreed with Class

---

1   the Defendants had done anything improper.[3] Two of these objections raised issues

2   that the Defendants respond to herein.[4] However, prior to so doing, the Defendants

3   provide further support that the settlement should be approved.

4   **II.     THE STANDARDS FOR CLASS SETTLEMENT APPROVAL**

5                  Settlements of complex class litigation prior to trial are strongly

6   favored. *In re Pacific Enterprises Securities Litig.*, 47 F.3d 373, 378 (9th Cir.

7   1995); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.), *cert.*

8   *denied*, 506 U.S. 953 (1992) ("*Class Plaintiffs*"); *Officers for Justice v. Civil Serv.*

9   *Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459

10  U.S. 1217 (1983) ("*OFJ*"). Under Fed. R. Civ. P. 23(e), a court should approve a

11  settlement if it is fair, reasonable, and adequate. *In re Mego Fin. Corp. Sec. Litig.*,

12  213 F.3d 454, 458 (9th Cir. 2000) ("*Mego*"); *Torrisi v. Tucson Elec. Power Co.*, 8

13  F.3d 1370, 1376 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994) ("*Torrisi*").

14                  The Court must consider whether the settlement as a whole is

15  reasonable; it stands or falls in its entirety. *Hanlon ; Class Plaintiffs*, 955 F.2d at

16  1276; *OFJ*, 688 F.2d at 628. "[T]he settlement or fairness hearing is not to be

17  turned into a trial or rehearsal for trial on the merits." *OFJ,* 68 F.2d at 625. "'[T]he

18  trial court is also entitled to rely upon the judgment of experienced counsel for the

19  parties." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538–39 (S.D. Fla.

20  1988), *aff'd*, 889 F.2d 21 (11th Cir. 1990). Indeed, where as here, the counsel

21  recommending approval of the settlement are known to the court as competent and

22  experienced, significant weight may be given to their opinion. *Kirkorian v. Borelli*,

23  695 F. Supp. 446, 451 (N.D. Cal. 1988).

24                  In determining the fairness of a proposed settlement, the Court is

25  _____

26  Counsel on the amount of fees to be awarded (or paid), which is a matter to be determined solely
    by the Court.

27  [3] *See* objections, Exh. E to Hudgens Decl.

28  [4] *See* Walsh Objection, Exh. F to Hudgens Decl., and Shapiro Objection, Exh. G to Hudgens
    Decl.

guided by factors summarized by the Ninth Circuit:

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class Members to the proposed settlement.

in *Hanlon*, 150 F.3d at 1026; *Accord Mego*, 213 F.3d at 458; *Torrisi*, 8 F.3d at 1375; *OFJ*, 688 F.2d at 625. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *OFJ*, 688 F.2d at 625.

## III.   THE SETTLEMENT SATISFIES THE RELEVANT APPROVAL STANDARDS

The settlement is fair, adequate, and reasonable under the factors set forth in *Hanlon*. Indeed, as is demonstrated below, the parties conducted arms' length negotiations, the settlement takes into account the risks and rewards of litigation, extensive discovery was completed prior to settlement, and class reaction has been overwhelmingly favorable to the settlement. As such, the Court should approve the settlement.

### 1.   Arms' Length Negotiations

There is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arms' length negotiations. *See* 4 H. Newberg & A. Conte, *Newberg on Class Actions* § 11.41 at 90 (4th ed. 2002) ("Newberg"). Indeed, the non-collusive nature of the negotiations and the stature of counsel have often been recognized as important factors in the final approval of class action settlements. *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("the fact that experienced counsel

1    involved in the case approved the settlement after hard-fought negotiations is

2    entitled to considerable weight").

3          Here, the settlement was the result of extensive, protracted, arms'

4    length and hard-fought negotiations between experienced class action lawyers —

5    Class Counsel and counsel for Defendants — thoroughly familiar with consumer-

6    products related class action litigation, and fully versed in the issues presented by

7    this action.

8          By the time these negotiations reached fruition, Class Counsel had

9    conducted extensive discovery in addition to their independent investigation into

10   this case. They reviewed voluminous documents produced by Defendants and had

11   briefed dispositive and hotly contested issues, some of which are unsettled under

12   California law and are under review by the California Supreme Court.[5]

13   Consequently, plaintiff's counsel was fully and thoroughly informed about the

14   strengths and weaknesses of their claims, as well as the risks and costs entailed in

15   litigating this action through trial and post-trial proceedings.

16        **2.    Risks And Results**

17         In assessing the fairness, reasonableness, and adequacy of the

18   proposed settlement, the Court must balance the benefits afforded to members of

19   the Class, and the immediacy and certainty of a substantial recovery for them

20   against the continuing risks of litigation. Generally, the principal risks to be

21   assessed are the difficulties and complexities of proving liability and damages. *See,*

22   *e.g., Mego*, 213 F.3d at 458–59 (assessing risk of inability to prove fraudulent

23   scheme in affirming settlement); *Linney v. Cellular Alaska Partnership*, 151 F.3d

24   1234, 1240–41 (9th Cir. 1998) ("*Linney*") (assessing risks involving fraudulent

25

26   _____

     [5] There are two cases currently on review before the California Supreme Court regarding the issue

27   of whether, given the passage of Proposition 64, a plaintiff must prove injury-in-fact and has lost
     money or property as a result of unfair competition. *See, e.g., Pfizer, Inc. v. Superior Ct.*, 141 Cal.
     App. 4th 290 (2006), *cert. granted*, 51 Cal. Rptr. 3d 707; *In re Tobacco Cases II*, 142 Cal. App.

28   891 (2006), *cert. granted*, 51 Cal. Rptr. 3d 707.

---

concealment and ability to obtain damages in affirming settlement); *Torrisi*, 8 F.3d at 1376 (approving settlement based in part on "inherent risks of litigation"); *Class Plaintiffs*, 955 F.2d at 1292 (approving settlement based on uncertainty of claims and avoidance of summary judgment); *OFJ*, 688 F.2d at 625 (approving settlement based in part on the possibility that a judgment after a trial, when discounted, might not reward Class Members for their patience and the likely delay reflected in the "track record" for large class actions).

Here, the litigation risks, both procedural and on the merits, are tangible and real. First, the claims asserted by plaintiff alleging fraud-based claims are generally not susceptible to class treatment because of the likely predominance of individual issues, such as exposure to the challenged claims, the materiality of those claims to consumers' purchase decisions, and the need to show actual injury caused by such claims. *See, e.g., Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) ("Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable."). Second, plaintiff's claims premised upon violations of the Federal Food & Drug Act or its California analogue are susceptible to dismissal on preemption and/or primary jurisdiction grounds. *See, e.g., Summit Tech. v. High-Line Medical Instruments, Co.*, 933 F. Supp. 918, 933 (C.D. Cal. 1996) (holding that "there is no private right of action to enforce the provisions of the FDCA or FDA regulations"). Third, on the merits, plaintiff's claims that Airborne "doesn't work" must dodge a literal avalanche of scientific research that indicates that the principal ingredients in Airborne Products boost the human body's immune system, which helps protect against diseases such as the common cold. *See, e.g.,* "Linus Pauling — Biography," nobelprize.org (noting Pauling's contributions to science and his theory "that the common cold can be controlled almost entirely in the United States and some other countries within a few years, through improvement of the nutrition of the people by an adequate intake of ascorbic acid [vitamin C].")

1     In the face of these litigation risks, the settlement is fair and adequate

2     because it provides real and substantial benefits for the putative Settlement Class by

3     creating a Settlement Fund that will contain at least $23,250,000 and ensuring that

4     none of these funds will revert to the Defendants.[6]

5     The Settlement Agreement ensures that Settlement Class Members

6     will be eligible for reimbursement, regardless of whether they possess proof of

7     purchase. Class Members who can provide proof of purchase (*e.g.*, receipts

8     showing the amount paid for Products, or a facsimile of a receipt prepared by the

9     retail outlet from which the Products were purchased) will receive a full

10    reimbursement for any Airborne Products purchased. To the extent Settlement

11    Class Members lack proof of purchase, they will be eligible for reimbursement of

12    the retail price of up to six packages of the Product (*i.e.*, $6.99 for each package of

13    Airborne tablets, $2.75 for Airborne Gummi, and $10.50 for Airborne Seasonal). If

14    valid claims exhaust the Settlement Fund, the Defendants will deposit up to an

15    additional $250,000 to the Fund. If the aggregate amount of valid claims still

16    exceeds the amount available to the Settlement Fund, claims will be paid on a *pro*

17    *rata* basis. Conversely, if a balance remains in the Settlement Fund at the end of the

18    claims period, the claims will be paid in full and the balance distributed *cy pres* to

19    non-profit organizations designated by Class Counsel and approved by the Court.

20    The risks of litigation described above demonstrate that there is, of

21    course, no guarantee of any recovery were this case to be litigated. Moreover, the

22    risks of litigation would continue well beyond the discovery and trial phases,

23    because post-trial motions and appeals of any substantial verdict would be a virtual

24    certainty.

25

---

26    [6] The Defendants stipulated to the certification of a class for settlement purposes only (Settlement
      Agreement at pp. 22–23), solely in order to facilitate this settlement, and reserve their rights to
27    contest certification of a litigation class. In fact, in the unlikely event that this case were to return
      to litigation, Defendants intend to oppose the certification of a litigation class on all available
28    grounds, as if no settlement had ever been reached.

---

### 3.    State Of Discovery

Another important factor favoring the settlement is that it was reached only after extensive discovery was conducted, briefing on a number of the key issues was done, and arguments over the relative strengths and weaknesses of the parties' positions were made at mediation. This is not a case where the settlement occurred in a vacuum without substantial discovery. The plaintiff propounded extensive discovery on the Defendants. Plaintiff received and reviewed hundreds of thousands of pages of documents. Consequently, plaintiff had a thorough understanding of the benefits and risks of proceeding to trial. *See Linney*, 151 F.3d at 1239; *Hanlon*, 150 F.3d at 1026. This settlement was based on information sufficient for Class Counsel to render an informed and rational judgment as to what was in the best interests of the Class.

### 4.    Class Reaction

In the face of proper class notice, as ordered by the Court and described in the declaration of Katherine Kinsella, and massive nationwide press coverage of the settlement, the absence of significant opt-outs or objections to the settlement further supports final approval.[7] Notice as required by Court Order has been published, as described in the declarations of Katherine Kinsella and Rust Consulting, submitted by the plaintiff on May 30, 2008.[8]

---

[7] Declaration of Katherine Kinsella, filed by the Plaintiff on May 30, 2008 ("Kinsella Decl.") ¶¶ 2, 12–26; Hudgens Decl. ¶ 8–16; 4 Newberg, § 11:41 at 108 ("[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Torrisi*, 8 F.3d at 1376 (citing the class' overwhelming positive reaction as among the factors that "point to the conclusion that the settlement was fair."); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir. 1990) (29 objections out of 281-member class "strongly favors settlement"); *Laskey v. International Union, UAW*, 638 F.2d 954, 957 (6th Cir. 1981) (the presence of only seven objections out of a 109-member class should be considered in determining adequacy); *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 175–76 (S.D.N.Y. 2000), *aff'd*, 236 F.3d 78 (2d Cir. 2001) (the presence of only 18 objections weighed in favor of settlement); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 624 (N.D. Cal. 1979) (the fact that only 16 percent of the class objected was deemed "persuasive" of settlement's adequacy); *NASDAQ*, 187 F.R.D. at 478 (some number of objections is typically expected; if only a small number is received, that fact supports an adequacy determination); *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 162 (S.D.N.Y. 1999), *aff'd*, 218 F.3d 132 (2d Cir. 2000) (same).

[8] Kinsella Decl. ¶¶ 2, 12–26; Hudgens Decl. ¶¶ 8–16.

---

As of the objections filing deadline on May 19, 2008, only 21 Class Members sent objections to the Settlement Agreement to the Claims Administrator,[9] and only four of these objections appeared to have been filed with the Court. Two of those four filings were rejected by the Court as improper.[10] As of May 25, 2008, the Claims Administrator reported that 419,606 claims had been filed, but at least 111,414 of those have been rejected based upon incomplete information or the likelihood of fraud.[11] While additional claims may be filed through September 15, 2008, the current claims result in an estimated $14.9 million to be paid in consumer redress.[12] Also as of May 25, 2008, the Class Administrator had received timely notice from 230 Class Members who have opted out of the settlement.[13] To the Defendants' knowledge, only one Class Member has opted out to pursue his claims independently from the Settlement Agreement.[14]

Of the 21 objections to the settlement that were received, fully 15 Class Members objected *as a gesture of support* for Airborne, most claiming satisfaction with Airborne Products.[15] Only two objections raised substantive concerns with the settlement and were properly filed with the Court.[16] The miniscule number of objectors in comparison to the size of the Settlement Class "raises a strong presumption that the terms of a proposed class settlement action are favorable to the Class Members." *Nat'l Rural Telecoms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *see also In re Omnivision Techs.*, 2007 U.S.

---

[9] *See* Hudgens Decl. ¶ 18.

[10] *See supra*, footnote 2.

[11] Hudgens Decl. ¶¶ 26, 29.

[12] *See* Hudgens Decl. ¶ 29.

[13] Hudgens Decl. ¶ 17.

[14] This refers to Gregory Geis who, as the Court may recall, sought to intervene in this case with Rachel LaRusso. LaRusso has since abandoned her individual claims and remains a class member.

[15] *See* objections, Exh. E to Hudgens Decl.

[16] *See* Walsh Objection, Exh. F to Hudgens Decl., and Shapiro Objection, Exh. G to Hudgens Decl.

---

Dist. LEXIS 95615, *23–24 (N.D. Cal., Dec. 6, 2007) (stating that "only 3 out of 57,630 potential Class Members" filed objections, and that this "lack of objection of the Class Members favors approval of the settlement"); *Churchill Vill., L.C. v. GE*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming a settlement where there were 45 objections out of 90,000 notices sent).

For the foregoing reasons, a finding that the proposed Settlement is fair and adequate is warranted and the Court should approve the proposed Settlement.

## IV.   NONE OF THE OBJECTIONS RAISE GROUNDS TO DENY FINAL APPROVAL OF THE SETTLEMENT

As the preceding section demonstrates, the Settlement warrants approval — and, as discussed below, neither of the two objectors raising substantive arguments against the settlement demonstrate anything to the contrary.

### 1.   The Objectors Do Not Establish That There Is Anything Unfair, Inappropriate, or Unreasonable About the Settlement

#### a.   The Objection of Kervin M. Walsh Does Not Raise Grounds Sufficient to Deny Final Approval

Objector Kervin M. Walsh raises six issues in his objection. These are: (1) that "the class notice is inadequate"; (2) that "the claims process is unclear and vague"; (3) that "the claims procedure is arbitrary and unfair"; (4) that "the fact that unclaimed funds will be distributed to persons or entities other than Class Members before the Class Members are made whole is unfair"; (5) that "the $250,000 cap on additional funds appears inadequate"; and (6) that "the settlement does not contain any specific practice change requirements as a result of the settlement."[17] None of these objections has any merit; the objections thus should not stand in the way of final approval of the settlement.

#### b.   Joel Shapiro Does Not Have Standing to Object and, Even if He Did, the Objection Does Not Otherwise

---

[17] *See* Walsh Objection at pp. 2–3, Exh. F to Hudgens Decl.

**Raise Grounds Sufficient to Deny Final Approval**

*A fortiori*, for a class member to have standing to object to the terms of a proposed settlement, that person must be a member of the Settlement Class. *See, e.g.*, *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1146 (9th Cir. 2000) (holding that to have standing, a party "must establish that she has suffered an injury, caused by the [defendant], that is redressable.") The apparent basis for Mr. Shapiro's claim that he is a class member is his allegation that he purchased Airborne Products during the class period.[18] In fact, the records kept by the Claims Administrator confirm that a Joel Shapiro at the address provided with Mr. Shapiro's objection filed a claim based on an alleged purchase of one box of Airborne Seasonal at Walgreens in Lake Worth, Florida, on January 1, 2007.[19] However, Airborne Seasonal (also known for a brief period as Seasonal Relief) was not available for sale at any Walgreens in Florida on that date.[20] Mr. Shapiro has thus offered no credible evidence supporting his claim that he is a Class Member and his objection should be disregarded.

Even if Mr. Shapiro had standing to object to the Settlement Agreement, his sole objection[21] — that the equitable relief portion of the Settlement is inadequate — does not raise grounds sufficient to deny final approval.

**2. None of the Objections Raise Grounds Sufficient to Deny Final Approval**

**a. Class Notice is Adequate**

This Court, in its Order Granting Preliminary Approval of Settlement, found that the form and procedures proposed for disseminating notice were the best practicable under the circumstances and satisfied Rule 23 of the Federal Rules of

---

[18] Shapiro Objection at p. 2, Exh. G to Hudgens Decl.

[19] Hudgens Decl. ¶ 19.

[20] Declaration of Lucy Morris in support of Final Approval of Settlement ("Morris Decl.") ¶ 4.

[21] Shapiro also objects regarding attorneys' fees. The Airborne Defendants take no position regarding the award of attorneys' fees. *See* n.4.

1   Civil Procedure and the requirements of due process.[22] And, as indicated below, by

2   every measure, the class notice provided in this case was sufficient.

3           The Defendants have gone to considerable lengths to ensure that all

4   potential claimants have been informed regarding Settlement and that they receive

5   appropriate redress under the Settlement. As proof of these efforts, the 419,606

6   claims made and up to $14.9 million sought[23] show both that the efforts at notifying

7   potential claimants have been successful and that the overall amount of the

8   settlement was reasonable, appropriate, and fair.

9           Kinsella/Novak Communications, Ltd. ("Kinsella"), leading experts in

10  class action notice, designed and effected an appropriate three-part notice program

11  sufficient to notify Class Members of the Settlement, consistent with the due

12  process requirements of Rule 23. This program included (1) direct notice to all

13  individuals likely to be Class Members whose names and addresses were readily

14  identifiable from Airborne's records, or those who requested the Notice of

15  Proposed Class Action Settlement to be sent as a result of seeing the published

16  summary notice; (2) broad national dissemination of notice through the use of paid

17  media, including newspaper supplements, consumer magazines, in-flight

18  magazines, a travel magazine, a newspapers, and web advertising; (3) electronic

19  notice through a dedicated informational website.[24] The paid media segment of the

20  notice program reached an estimated 80.4 percent of adults 18 and older, with an

21  average estimated frequency of 2.6 times each.[25] The scope of this notice plan

22  compares favorably with other class action cases in which notice has been deemed

23  effective. *See, e.g.*, *In re Compact Disc Minimum Advertised Price Antitrust Litig.*,

24  216 F.R.D. 197, 203–04 (D. Me. 2003) (holding that a notice program, also

25  _____

    [22] Order (1) Granting Preliminary Approval of Settlement and (2) Setting Schedule for Final
26  Approval (Nov. 29, 2007), Para. 10.

    [23] *See* Hudgens Decl. ¶ 29.
27
    [24] Kinsella Decl. ¶ 13.

28  [25] Kinsella Decl. ¶ 28.

designed by Kinsella, which was estimated to have reached "at least 85% of the music-consuming public in the country with an average estimated frequency of more than four times" was "excellently designed, reasonably calculated to reach potential Class Members, and ultimately highly successful in doing so"); *In re Am. Family Enters.*, 256 B.R. 377, 417 (D.N.J. 2000) (finding notice "adequate and sufficient" where the plan, also designed by Kinsella, reached "at least 90 to 93% of Class Members an average of 2.8 to 3.1 times").[26]

Moreover, news of the Settlement was widely broadcast beyond traditional print publications. The Airborne Settlement has been widely reported upon in the news media, in forums as diverse as the New York Times,[27] CNN/Money,[28] NPR,[29] ABC News,[30] and Comedy Central's Colbert Report.[31] The settlement has garnered significant internet "buzz," on sites such as PerezHilton.com, a website with millions of unique hits per day,[32] and also has its

---

[26] As they have with Kinsella, courts have also lauded the work of Rust Consulting, the Claims Administrator in this case. *See*, e.g., *Elkins v. Equitable Life Ins. Co. of Iowa*, No. Civ.A. 96-296-CIV-T-17B, 1998 WL 133741, at \*23 (M.D. Fla. Jan. 27, 1998) (finding that a notice program administered by Rust Consulting provided the class with "extensive and comprehensive notice" that "exceeded the requirements of applicable law, the rules of this Court, and due process under the federal constitution"); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 382 (D.D.C. 2002) (finding that the "extensive efforts" of notice consultants Kinsella and Rust Consulting in identifying and notifying Class Members yielded "impressive" results and constituted "the best notice practicable under the circumstances" (thus meeting the standard under Fed. R. Civ. P. 23)).

[27] Mike Nizza, *Makers of Airborne Settle False-Ad Suit With Refunds*, NYTimes.com, March 4, 2008, at http://thelede.blogs.nytimes.com/2008/03/04/makers-of-airborne-settle-false-ad-suit-with-refunds/?hp.

[28] *Airborne settles lawsuit for $23.3 million*, CNN/Money, March 4 2008, at http://money.cnn.com/2008/03/04/news/companies/airborne_settlement/.

[29] *Airborne Settles Suit over False Claims*, March 6, 2008, at http://www.npr.org/templates/story/story.php?storyId=87937907.

[30] Kate Barrett, *Airborne to Refund Consumers*, ABC News, March 3, 2008, at http://abcnews.go.com/Health/ColdFlu/story?id=4380374&page=1.

[31] *Airborne Lawsuit*, Colbert Report Television Show, March 13, 2008, at http://www.comedycentral.com/colbertreport/videos.jhtml?videoId=164010.

[32] *See* Hannah Clarck, *Top 10 Disrupters of 2006*, Forbes, January 24, 2007 at http://www.forbes.com/2007/01/22/leadership-disrupter-youtube-lead-innovation-cx_hc_0122lede_slide_10.html.

---

1    own section in Airborne's Wikipedia entry.[33]

2    In addition to class notice, Class Members were provided additional

3    means to receive information about the Settlement to help them determine their

4    rights, as well as where and how to submit a claim. Rust Consulting, Inc. ("Rust"),

5    the entity whose intention the Court approved by the Court to administer the claims

6    process, established a website (www.airbornehealthsettlement.com) where

7    Settlement Class Members could obtain more information about the Settlement

8    (*e.g.*, the long-form class notice and other settlement documentation).[34] Rust also

9    created a toll-free telephone number with an Informational Voice Recording

10   ("IVR") to provide another means for Class Members to request Settlement

11   information.[35]

12   The law is clear that notice need not reach every possible individual

13   claimant where the Class Members cannot be identified through a reasonable effort.

14   *See, e.g.*, *In re Toys R Us Antitrust Litigation*, 191 F.R.D. 347, 350 (E.D.N.Y.

15   2000) (approving settlement, stating, "While not sent to individual consumers, the

16   Notice was well calculated to reach the toy consuming public throughout the

17   country. Notice was published in national magazines and newspapers and on the

18   internet"); *State of New York by Vacco v. Reebok International, Ltd.*, 903 F. Supp.

19   532, 533 n.1 (S.D.N.Y. 1995) (approving settlement, stating, "This was plainly the

20   best notice practicable under the circumstances given the enormous number of

21   potential class numbers who had purchased products, the lack of warranty cards to

22   identify customers, and the high costs of individual notice. Even the costs of

23   newspaper notice were very high"); *see also In re Agent Orange*, 818 F.2d 145, 169

24   (2d Cir. 1987) (refusing to require parties to send notice to 2.4 million Vietnam

---

25   [33]    *Airborne    (Dietary    Supplement)*,    Wikipedia    Entry,    at

26   http://en.wikipedia.org/wiki/Airborne_(dietary_supplement) (contains a section on "Class action
     lawsuit and settlement" and links to the complaint and settlement website).

27   [34] *See* Hudgens Decl. ¶ 11.

28   [35] *Id.* at ¶ 12.

---

veterans since there was "no easily accessible list" of veterans and no list "could have been compiled through reasonable efforts"); *Sollenbarger v. Mm. States Tel. & Tel. Co.*, 121 F.R.D. 417, 436–37 (D. N.M. 1988) (finding it "unreasonable" for party to have to conduct a search for names "for the past five years from ... microfiche telephone records"). The various efforts to provide notice to settlement Class Members described herein, as well as the results of these efforts — 419,606 claimants and an estimated $14.9 million in redress thus far[36] — speak to the reasonableness and appropriateness of the notice.

As to the content of the notice communicated, Objector Walsh complains that the class notice is inadequate because it does not, for example, "provide the total dollar amount of Airborne products sold during the class period" and because it does not "indicate the size of the class or the amount of potential claims."[37] Nowhere does Walsh cite any authority for the proposition that the failure to include these items renders the notice legally insufficient. To the contrary, the prevailing law states that proper notice should provide: "a) the material terms of the proposed settlement; b) disclosure of any special benefit to the class representatives; c) disclosure of the attorneys' fees provisions; d) the time and place of the final approval hearing and the method for objection to the settlement; e) an explanation regarding the procedures for allocating and distributing the settlement funds; and f) the address and phone number of class counsel and the procedures for making inquiries." *Rodriguez v. West Publ. Corp.*, 2007 U.S. Dist. LEXIS 74776, *21–22 (C.D. Cal. Sept. 10, 2007); *see also In re Aetna Inc. Secs. Litig.*, 2001 U.S. Dist. LEXIS 68, at *16 (E.D. Pa. Jan. 4, 2001) (holding that notice must be "reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their

---

[36] *See* Hudgens Decl. ¶ 29.

[37] Walsh also complains about disclosure relating to attorneys' fees. The Airborne Defendants take no position on Class Counsel's attorneys' fees. *See* n.4.

1   objections.") (citations omitted). The notice here meets all of these requirements

2   and, thus, is adequate.

3                  **b.      The Claims Process is Not Arbitrary or Unfair**

4                  Objector Walsh claims that the term "Valid Proof of Purchase" under

5   the Claims Notice is unclear and vague. He argues that it is "not clear" what, "other

6   than a receipt," will satisfy this provision. This term was intended to be broad in

7   order to encompass any of a number of items, including receipts, that may

8   constitute a "Valid Proof of Purchase." This phrasing therefore functions to *expand*

9   the number of potential Class Members who may take full advantage of this

10  settlement. Walsh has not supplied any facts that would suggest this allegedly

11  "unclear and vague" term did anything to restrict the availability of redress to any

12  potential claimant, or is otherwise unfair, inadequate, or unreasonable.

13                 **c.      The Claims Procedure is Not Arbitrary or Unfair**

14                 Objector Walsh also claims that the settlement's reimbursement limit

15  of six Airborne Products without Valid Proof of Purchase is unfair because, for

16  instance, Class Members may have purchased more than six Products, but did not

17  retain proof of those purchases.

18                 The Defendants respectfully disagree with the Objector Walsh's

19  assertion. The parties attempted to structure a settlement that did not create barriers

20  to claims submission while also minimizing the inherent risk of fraud associated

21  with the submission of claims without proof of purchase. Fraudulent claims could

22  materially impact the Settlement Fund and thereby reduce the pool available to

23  legitimate claimants.[38] The six-product limit is based upon the Claims

24  Administrator's experience that, under normal circumstances, it would provide a

25  fair threshold to discourage fraudulent claims.[39] And, even with this limitation, a

26  _____

27  [38] Rust has taken a number of measures to reduce fraudulent claims by, for instance, excluding those who claim to have purchased products before those products were released. *See, e.g.*, Hudgins Decl. ¶¶ 5–7, 22–30.

28  [39] Hudgins Decl. ¶ 6.

claimant could receive significant redress — *as much as* $63 — *without submitting any proof that said claimant ever purchased an Airborne Product*. The Airborne Defendants believe, based upon the recommendation and experience of the Claims Administrator, that this limit is an appropriate, reasonable, and fair balance between ensuring that consumers receive the appropriate redress while reducing the impact of illegitimate claims on the overall Settlement Fund.

### d.     The Distribution of Unclaimed Funds to Charities is Fair

Objector Walsh claims that the Settlement is unfair because unused Settlement Funds would be distributed "to charities under a variety of circumstances before consumers who timely file claims are made whole."[40] This concern is not reasonable. As described above, the Defendants will deposit a significant amount — a minimum of $23.25 million — into a non-reversionary Settlement Fund to reimburse eligible Class Members. The Settlement Agreement has been carefully structured to ensure that all potential claimants receive reasonable and fair redress. The Settlement has been widely publicized and 419,606 consumers have already filed claims for an estimated $14.9 million in redress.[41] There is therefore every reason to believe that consumers who feel that they are entitled to redress will have an opportunity to file a claim and receive such redress. Consumers with valid proof of purchase have no limit to the amount they may claim under the Settlement. Even consumers *without any proof of purchase* might receive as much as $63 in compensation. Moreover, the Settlement expressly provides that the Court retains jurisdiction to approve any *cy pres* award, to ensure the fairness of any such distribution.

There is nothing inappropriate about this arrangement under the law; indeed, courts have approved class settlements with similar *cy pres* relief

---

[40] Walsh Objection at p. 3, Exh. F to Hudgens Decl.

[41] *See* Hudgens Decl. ¶ 29.

1    provisions. *See, e.g.*, *Rodriguez v. West Publ. Corp.*, 2007 U.S. Dist. LEXIS 74767

2    (C.D. Cal. Sept. 10, 2007) (rejecting objectors argument that the possibility of a cap

3    on individual recovery resulting in a *cy pres* award rendered the settlement

4    inadequate, where the maximum payment was set based upon reasonable

5    considerations and where no funds reverted to the defendants); *In re Toys R Us*

6    *Antitrust Litigation*, 191 F.R.D. 347, 350 (E.D.N.Y. 2000) (approving settlement

7    that provided toys to be distributed to charitable organizations without providing

8    *any* redress for Class Members); *State of New York by Vacco v. Reebok Int'l. Ltd.*,

9    903 F. Supp. 532, 534 (S.D.N.Y. 1995) (approving settlement that provided cash or

10   products to be distributed to various charitable organizations, again, without

11   providing *any* redress for Class Members), *appeal dismissed by*, 96 F.3d 44 (2d Cir.

12   1996).

13          In sum, there is no basis for believing that the Settlement's *cy pres*

14   distribution provision is anything other than fair, appropriate, and reasonable.

15                    **e.     The Settlement Fund is Adequate**

16          Objector Walsh also claims that the $250,000 in additional funding the

17   Defendants may be required to contribute to the settlement "appears inadequate."

18   The Airborne Defendants again respectfully disagree with the Objector. In deciding

19   whether to approve of this settlement, "[i]t is the settlement taken as a whole, rather

20   than the individual component parts, that must be examined for overall fairness."

21   *Hanlon*, 150 F.3d at 1026. Although the claims period will continue after the

22   hearing on final approval, to date, the amount of valid claims, plus the amount of

23   attorneys' fees Class Counsel seeks, does not exceed the Settlement Fund. As stated

24   above, the overall contribution of the Defendants to the settlement fund is

25   significant, particularly in relation to the number and amounts of claims filed. There

26   is simply no reason to believe that the amount contributed by the Defendants is in

27   anyway unreasonable, inappropriate, or unfair.

28                    **f.     The Settlement is Sufficient with Respect to Equitable**

---

1

### Relief

2

3          Objectors Walsh and Shapiro take issue with the structure of the

settlement's equitable relief.

4

5          Walsh contends that the settlement is unfair because it "does not

contain any specific practice change requirements as a result of the settlement."[42]

6

Shapiro claims that Class Counsel's determination to accept equitable relief to be

7

determined by the FTC (and State Attorneys General) is somehow evidence that the

8

plaintiff is "throwing the case" or "disingenuously pled claims that he had no

9

intention of pursuing, for the sole purpose of delivering a full release to the

10

Defendants."[43] Neither of these objections has merit. The equitable relief in the

11

Settlement Agreement is entirely reasonable, adequate, and fair to the Class

12

Members and should be approved.

13          The Settlement stipulates that changes in Defendants' business

14

practices will be determined by the outcome of the investigation of the FTC.[44]

15

Plaintiff and Class Counsel elected to rely on the final determination of the FTC

16

regarding non-monetary redress, believing that the FTC would require appropriate

17

reform of the Defendants' business practices. The FTC is the federal agency

18

charged by Congress to protect the public interest by ensuring truthfulness in

19

advertising and packaging and fairness in competition. *See* 15 U.S.C. § 41 *et seq*.

20

Courts have recognized the FTC's expertise in regulating just these types of cases.

21

*See, e.g.*, *Sears, Roebuck & Co. v. FTC*, 676 F.2d 385, 391 (9th Cir. 1982)

22

(recognizing the "the FTC's accumulated expertise in striking the proper

23

---

24   [42] Walsh Objection at p. 3, Exh. F to Hudgens Decl.

25   [43] Shapiro Objection at p. 2, Exh. G to Hudgens Decl.

26   [44] The Airborne Defendants are currently in settlement talks with the FTC and are nearing an
agreement in principle. As was noted at the preliminary approval hearing, the Attorneys General
for 28 states (with several more joining since that time) also have commenced inquiries into

27   Airborne's marketing practices and will also likely obtain injunctive relief that will require
changes in Airborne's business practices. However, these negotiations have not reached the stage

28   where the Defendants could describe with certainty the nature of that relief.

---

1    relationship between violations found and effective orders" in the false advertising

2    context). In this case, the FTC has engaged in a lengthy and searching investigation

3    into Airborne's sales, marketing, and advertising practices. Moreover, entrusting

4    the determination of appropriate injunctive relief to the FTC eliminates the

5    possibility of inconsistent injunctive provisions. Furthermore, the Airborne

6    Defendants have already made extensive changes to their business practices —

7    including significant changes to the advertising, marketing, and packaging of the

8    Airborne Products. These changes resolve many of the concerns voiced by Class

9    Counsel and the regulatory agencies.

10           Additionally, the Settlement Agreement itself has all of the hallmarks

11   of a fair, reasonable, and adequate settlement. It was the result of months of

12   extensive, arms' length negotiations between Class Counsel and the Defendants.[45]

13   The Settlement provides valuable, substantial monetary benefits for the entire class

14   and ensures that Settlement Class Members will be eligible for reimbursement,

15   regardless of whether they possess proof of purchase.

16           By agreeing to this Settlement, the parties ensured that the claimants'

17   monetary redress would be disbursed as expeditiously as possible, and eliminated

18   the need for expending time and/or resources to conduct duplicative negotiations of

19   business practice reforms at the same time such reforms were (and are) being

20   sought by appropriate regulatory entities.

21           There is therefore no basis to argue that the parties' agreement to defer

22   to the expertise and judgment of the FTC for the determination of appropriate

23   business practice reforms by the Defendants.

24           **g.      The Distribution Plan is Fair and Reasonable**

25           Finally, the proposed distribution plan is fair and reasonable to the

26   Settlement Class. The parties have agreed to a distribution plan that allows claims

27

28   [45] *See* II.2.a.5.

DEFENDANTS' MEMO OF LAW IN SUPPORT           20          Case No. EDCV07-770 VAP (OPx)
OF FINAL SETTLEMENT APPROVAL

1   to be paid within 30 days after the end of the claims period, which ends midnight,

2   September 15, 2008, or 30 days after all appeals have been exhausted, whichever is

3   later.[46] Not later than 10 calendar days after the Court approves the Settlement, all

4   principal and interest accrued between that date and the date that funds were paid

5   into the Settlement Fund shall be made available for distribution.

6   **V.      CONCLUSION**

7

8          For the foregoing reasons, Defendants respectfully request that this

9   Court grant Final Settlement Approval.

10

11  Dated: May 30, 2008                    Respectfully submitted,

12                                         **WEIL, GOTSHAL & MANGES LLP**

13                                         By: _____s/Gregory D. Hull_____
                                                     Gregory D. Hull

14                                         *Attorneys for Airborne, Inc., Airborne*
15                                         *Health, Inc., Knight-McDowell Labs*

16  Dated: May 30, 2008                    **NEVERS, PALAZZO, MADDUX &**
                                           **PACKARD, PLC**

17                                         By: _____s/Gary W. Nevers_____
                                                   Gary W. Nevers

18                                         *Attorneys for Thomas Rider McDowell*
19                                         *and Victoria Knight-McDowell*

20

21

22

23

24

25

26

27

28  _____
    [46] Settlement Agreement at p. 21.