O

1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9         CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 DAVID WILSON, ) <br> individually and on ) <br> 12 behalf of all others ) <br> similarly situated, ) <br> 13 ) <br> Plaintiff, ) <br> 14 ) <br> v. ) <br> 15 ) <br> AIRBORNE, INC., AIRBORNE ) <br> 16 HEALTH, INC., KNIGHT- ) <br> MCDOWELL LABS, THOMAS ) <br> 17 "RIDER" MCDOWELL, ) <br> VICTORIA KNIGHT- ) <br> 18 MCDOWELL, and DOES 1- ) <br> 100, inclusive, ) <br> 19 ) <br> Defendants. ) <br> 20 _____ ) | Case No. EDCV 07-770-VAP (OPx) <br><br> **[Motions filed on May 19, 2008, and May 30, 2008]** <br><br> **ORDER (1) GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT, (2) GRANTING IN PART MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES, AND (3) GRANTING IN PART MOTION FOR INCENTIVE AWARD TO PLAINTIFF** |

21       Plaintiff's Motion for Final Approval of Settlement,

22  Motion for Attorneys' Fees and Litigation Expenses, and

23  Motion for Incentive Award to Plaintiff came before this

24  Court for hearing on June 16, 2008.  After reviewing and

25  considering all papers filed in support of, and in

26  opposition to, the Motion, as well as the arguments

27  advanced by counsel at the hearing, the Court GRANTS the

28  Motion for Final Approval of Settlement, GRANTS in part

1  the Motion for Attorneys' Fees and Litigation Expenses,
2  and GRANTS in part the Motion for Incentive Award to
3  Plaintiff.

4

5                     **I. BACKGROUND**
6  **A.   Procedural History**
7       Plaintiff David Wilson filed a Complaint in
8  California Superior Court for the County of San
9  Bernardino on May 17, 2006.  The Complaint alleged state
10 law claims against Defendants Airborne Inc., Airborne
11 Health, Inc., and Knight-McDowell Labs, based on their
12 allegedly misleading and deceptive advertising for
13 Airborne, a nutritional supplement.  According to the
14 Complaint, Airborne's packaging and advertising falsely
15 promised "100% Satisfaction Guaranteed," (Compl. ¶ 15),
16 and touted Airborne as a "Miracle Cold Buster," (Compl. ¶
17 15), that can ward off a cold after its onset.  (Compl ¶
18 18.)  Defendants also were alleged to rely on the results
19 of a clinical study, even though it was conducted by
20 persons who were not scientists or doctors and who were
21 paid by Defendants.  (Compl. ¶¶ 22-24.)

22

23      Plaintiff Wilson brought the Complaint on behalf of a
24 class of persons who "purchased the Airborne Cold Remedy,
25 and who (1) resided in California during the Class
26 Period; (2) purchased the Product while located in
27 California; or (3) purchased the Product from a source in
28

California."  (Compl. ¶ 30.)   The Class Period was
defined as the four-year period before the filing of the
Complaint, or May 17, 2002, through May 17, 2006.   The
Complaint alleged causes of action for:  (1) violation of
the Consumer Legal Remedies Act, Cal. Civ. Code section
1750; (2) violation of the Unfair Competition Act, Cal.
Bus. & Prof. Code section 17200; (3) negligent
misrepresentation; (4) untrue and misleading advertising
in violation of Cal. Bus. & Prof. Code section 17500; (5)
unjust enrichment; (6) breach of implied warranty; (7)
constructive fraud; and (8) deceit.

Wilson filed a First Amended Complaint ("FAC") on
August 30, 2006, continuing to allege claims on behalf of
a California class.   The FAC narrowed the class
definition to include only persons who purchased the
Airborne Cold Remedy "while residing in California during
the Class Period," between May 17, 2002, and May 17,
2006.  (FAC ¶ 33.)   The FAC also dropped the claims for
negligent misrepresentation, constructive fraud, and
deceit.   The FAC named as new Defendants Airborne
Holdings, Inc., and the founders of Airborne, Thomas
Rider McDowell and Victoria Knight-McDowell.   Defendants
responded by filing a demurrer and a motion to strike on
October 10, 2006, and a joinder on January 30, 2007.
///
///

On May 24, 2007, Plaintiff filed a Second Amended Complaint ("SAC") in California Superior Court, and for the first time made claims on behalf of a nationwide class of Airborne purchasers.  The SAC defined the class as "[a]ll persons who purchased Airborne while residing in the United States, from May 17, 2002, to the present." (SAC ¶ 58.)  The SAC also defined a subclass, "comprising all class members who are 'consumers' within the meaning of California Civil Code section 1761(d)."  (SAC ¶ 58.) The SAC stated causes of action for:  (1) a declaration that the two individual Defendants are not shielded from liability by Airborne's corporate form; (2) violation of the Consumer Legal Remedies Act, Cal. Civ. Code section 1761; (3) violation of the False Advertising Law, Cal. Bus & Prof. Code section 17500; (4) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code section 17200; and (5) unjust enrichment.

Defendants removed the case to this Court on June 22, 2007, under the removal provisions of the Class Action Fairness Act, 28 U.S.C. section 1453.  (Docket No. 1.)

On August 29, 2007, the parties filed a Joint Motion for Order Granting Preliminary Approval of Settlement (Docket No. 24), along with supporting declarations and exhibits.  On the same day, the parties also filed a Joint Motion for Injunction (Docket No. 30), requesting

4

1  an order enjoining parallel litigation in the United

2  States District Court for the District of New Jersey.  On

3  September 24, 2007, the Court held a hearing on the

4  Motions and requested additional briefing by the parties

5  concerning their settlement agreement.  By Order dated

6  November 28, 2007, the Court denied the request to enjoin

7  the New Jersey litigation.  (Docket No. 116.)  By Order

8  dated November 29, 2007 ("Preliminary Approval Order,"

9  Docket No. 117), the Court granted preliminary approval

10  to the parties' settlement agreement, provisionally

11  certified a class for settlement purposes, approved the

12  proposed form and manner of notice to class members, and

13  set a schedule for final approval.

14

15     On May 19, 2008, Plaintiff filed a Motion for

16  Attorneys Fees and Litigation Expenses ("Fee Motion,"

17  Docket No. 135) and Motion for Incentive Award to

18  Plaintiff ("Incentive Award Motion," Docket No. 132).  In

19  support of the Fee Motion, Plaintiff also filed a

20  Memorandum of Points & Authorities ("Fee Mem. P. & A.,"

21  Docket No. 135)[1] and the declarations of Jeffrey L. Fazio

22  ("Fazio Decl.," Docket No. 136) and Stephen Gardner

23  ("Gardner Decl.," Docket No. 133).  In support of the

24

25     [1]On May 21, 2008, Plaintiff filed an "Erratum Re
26  Memorandum of Points and Authorities in Support of Motion
   for Award of Attorney Fees and Litigation Expenses"
27  (Docket No. 141).  The Court's citations herein to
   Plaintiff's Memorandum of Points and Authorities are to
28  the corrected version filed on May 21.

1   Incentive Award Motion, Plaintiff filed his own
2   declaration ("Wilson Decl.," Docket No. 132).  In support
3   of both Motions, Plaintiff filed the declaration of
4   Melissa M. Harnett ("Harnett Decl.," Docket No. 134).
5
6       On May 30, 2008, Plaintiff filed a "Motion and
7   Memorandum of Points and Authorities in Support of Final
8   Approval of Settlement ("Settlement Approval Motion,"
9   Docket No. 146), along with the declarations of Katherine
10  Kinsella ("Kinsella Decl.," Docket No. 147), Eric C.
11  Hudgens ("Hudgens Decl.," Docket No. 148), Richard M.
12  Pearl (Docket No. 149), and Dina E. Micheletti (Docket
13  No. 150).[2]  Also on May 30, 2008, Defendants filed a
14  "Memorandum of Law in Support of Final Settlement
15  Approval" ("Def.'s Brief," Docket No. 144) and the
16  declaration of Lucy Morris (Docket No. 145).
17
18      Two persons have filed with the Court objections to
19  the Settlement Approval Motion and Plaintiff's request
20  for attorneys' fees.  On May 19, 2008, objectors Kervin
21  M. Walsh and Joel Shapiro, appearing through their
22  respective counsel, filed objections to approval of the
23  settlement and the award of attorneys' fees ("Walsh
24
25
26  _____
27      [2]On June 2, 2008, Plaintiff filed an Erratum
    providing the exhibits to the Pearl Declaration, which
    had been omitted from the initial filing.  (Docket No.
28  153.)

1  Objections," Docket No. 139, and "Shapiro Objections,"

2  Docket No. 140).[3]

3

4      Plaintiff filed a "Consolidated Response to

5  Objections to Settlement Agreement" ("Pl.'s Response,"

6  Docket No. 151) on May 30, 2008.[4]  On June 13, 2008,

7  objectors Joel Shapiro and Kervin M. Walsh each filed a

8  Reply.[5]  [Docket Nos. 160, 161 ("Shapiro Reply").]

9

10 **B.   Terms of Settlement Agreement**

11     The parties' settlement agreement provides that

12 Defendants will create a $23.25 million non-reversionary

13 settlement fund.[6]  (Settlement Agreement at 13, ¶ 2(a).)

14  _____

15     [3]On May 21, 2008, objectors Denise Fairbank and
   Falicia Estep attempted to file their objections, but
16 their filings were rejected for failure to file
   electronically pursuant to General Order 08-02.  (Docket
17 No. 143.)

18     [4]On June 2, 2008, Plaintiff filed an Erratum to
   correct the absence of a table of authorities in his
19 original Response.  (Docket No. 153.)

20     [5]On June 12, 2008, Denise Fairbank filed a Reply to
   Plaintiff's Response (Docket No. 159), despite her
21 failure properly to file an objection with the Court.
   Nevertheless, Plaintiff has responded to Fairbank's
22 objections, and Fairbank's counsel appeared at the June
   16, 2008, hearing on the Motions.  The Court therefore
23 considers Fairbank's objections as set forth below.
   Fairbank's objections are included as Exhibit H to the
24 Hudgens Declaration ("Fairbank Objections," Docket No.
   148).

25
       [6]A copy of the parties' "Stipulation and Agreement of
26 Settlement" was provided to the Court in connection with
   their joint Motion for preliminary approval of the
27 settlement.  [See Declaration of Melissa M. Harnett in
   Support of Joint Motion for Order Granting Preliminary
28                                          (continued...)

1  Eligible class members who submit claims can be
2  reimbursed for the purchase price of any Airborne product
3  with a proof of purchase.  (<u>Id.</u> at 15.)   Class members
4  who do not have proofs of purchase can be reimbursed for
5  the purchase price of up to six packages of Airborne.
6  (<u>Id.</u> at 15.)   If the claims submitted by the end of the
7  claims period indicate that this initial fund will be
8  depleted, Defendants will deposit an additional $250,000
9  to pay valid claims.  (<u>Id.</u> at 13, ¶ 2(b).)

10

11      If the claims made exceed the available settlement
12  funds, the funds are to be distributed pro rata to
13  claimants.  (<u>Id.</u> at 15.)   Conversely, if settlement funds
14  remain after the payment of claims, the parties have
15  agreed to <u>cy pres</u> distribution to non-profit
16  organizations suggested by the parties and approved by
17  the Court.  (<u>Id.</u> at 16.)

18

19      The settlement agreement also calls for class
20  counsel's fees and expenses to be paid from the
21  settlement fund.  (<u>Id.</u> at 26.)   The agreement provides
22  that class counsel may apply to the Court for a fee and
23  expense award not to exceed 25 percent of the gross
24  settlement fund, after deduction of tax payments, plus a
25  pro rata share of interest, dividends, and other

26  _____

27      [6](...continued)
    Approval of Settlement (Docket No. 37), Ex. 3
28  ("Settlement Agreement").]

distributions accrued by the fund.  (Id. at 26.)
Defendants' counsel agreed not to oppose the fee
application.

     The settlement allows for an incentive payment to the
named Plaintiff, David Wilson, in an amount to be
approved by the Court, but not to exceed $10,000.  (Id.
at 15.)   Defendants will pay this amount separately, and
in addition to, the amount deposited in the settlement
fund for the payment of claims.  (Id. at 15.)

     Though the SAC sought injunctive relief requiring
Airborne to change its packaging and advertising, the
settlement agreement makes no provision for such changes.
Instead, the parties agreed to defer to any equitable
relief that may result from ongoing administrative
inquiries by the Federal Trade Commission and various
state attorneys general.  (Id. at 22, ¶ 5(a).)
Defendants have represented that they are close to
entering into a settlement with government authorities.
(Defs.' Brief at 1 n.1.)

     Finally, Defendants agreed to pay for the costs
associated with giving notice to class members and
administering the settlement fund.  (Id. at 29.)
///
///

1

## II. DISCUSSION

2

**A.   Motion for Final Approval of Settlement**

3      Rule 23 of the Federal Rules of Civil Procedure

4 provides that the "claims, issues, or defenses of a

5 certified class may be settled, voluntarily dismissed, or

6 compromised only with the court's approval."  Fed. R.

7 Civ. P. 23(e).  Rule 23(e) further states: "If the

8 proposal would bind class members, the court may approve

9 it only after a hearing and on finding that it is fair,

10 reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

11

12     **1.   Notice to the class**

13     As an initial matter, the Court finds that class

14 members received adequate notice of the pendency of the

15 action and the preliminary approval of the settlement

16 agreement.  As set forth in the Declaration of Kathleen

17 Kinsella, notice to the class was disseminated via print

18 media advertisements in large-circulation publications,

19 including in-flight travel magazines, and online

20 advertisements.  (Kinsella Decl. ¶¶ 24-35.)  Where

21 possible, direct notice was sent to identifiable class

22 members.  (Id. ¶ 23.)  Notice also was provided online at

23 www.AirborneHealthSettlement.com.  (Id. ¶ 36.)  Finally,

24 though it was not part of the plan for disseminating

25 notice, initial media coverage of the settlement

26 agreement provided additional opportunities for class

27 members to learn about the settlement.  (Id. ¶ 40.)  The

28

1  measurements used to estimate the reach of the print and
2  Internet advertisements suggest that 80 percent of adults
3  learned of the settlement.  (Kinsella Decl. ¶ 38.)

4

5      The Court finds these notice procedures provided "the
6  best notice that is practicable under the circumstances."
7  Fed. R. Civ. P. 23(c)(2)(B).

8

9      Objector Shapiro has raised a concern that the
10 settlement class did not receive adequate notice of the
11 Fee Motion, as required by Rule 23(h).  (Shapiro
12 Objections at 3-4.)  That Rule provides:

13         In a certified class action, the court may
14         award    reasonable    attorney's    fees    and
15         nontaxable costs that are authorized by law or
16         by the parties' agreement. . . .  A claim for
17         an award must be made by motion under Rule
18         54(d)(2), subject to the provisions of this
19         subdivision (h), at a time the court sets.
20         Notice of the motion must be served on all
21         parties and, for motions by class counsel,
22         directed to class members in a reasonable
23         manner.

24 Fed. R. Civ. P. 23(h)(1).  Here, print media
25 advertisements informed potential settlement class
26 members that the proposed settlement fund included the
27 amount from which court-awarded attorneys' fees would be

28

1  paid, and that the proposed settlement would come before

2  the Court for a hearing on June 16, 2008.  (Kinsella

3  Decl. ¶ 24 & Ex. 2.)  Where settlement class members

4  could be contacted directly, the notice they received

5  stated that up to 25 percent of the proposed settlement

6  fund could be approved by the Court for attorneys' fees,

7  and that the Court would consider the amount of any

8  attorneys' fee award at the June 16, 2008, hearing.

9  (Kinsella Decl. ¶ 23 & Ex. 1 at ¶¶ 7, 15.)

10

11      The Court finds the parties provided notice of the

12  attorneys' fees request in a "reasonable manner," as

13  required by Rule 23(h)(1).  Where, as here, settlement

14  class members are retail purchasers of Defendants'

15  consumer product, whose identities and contact

16  information cannot readily be ascertained, the summary

17  nature of the information provided by the parties in

18  their print media advertisements was reasonable.  In the

19  cases Objector Shapiro attempts to distinguish from this

20  one, the classes comprised current and former employees

21  of the defendants and securities investors.  (Shapiro

22  Reply at 4-5); see Bessey v. Packerland Plantwell, Inc.,

23  No. 4:06-cv-95, 2007 WL 3173972, *1 (W.D. Mich. Oct. 26,

24  2007); In re Bisys Secs. Litig., No. 04 Civ. 3840(JSR),

25  2007 WL 2049726 (S.D.N.Y. July 16, 2007).  Contact

26  information for the class members in those cases

27  presumably could be ascertained more readily than the

28

1  potential class members here.  Furthermore, Shapiro's
2  objection does not specify how knowing Plaintiff's
3  counsel's precise hourly billing rates or number of hours
4  billed would have altered materially his ability to
5  object to the overall amount of attorneys' fees available
6  under the settlement agreement.

7

8      The Court therefore overrules the objections to the
9  adequacy of the notice made by Shapiro.  The Court
10 further overrules the objections to the adequacy of
11 notice made by Objector Walsh, who provided no authority
12 for his assertion that the notice should have included
13 information such as the size of the class or the dollar
14 amount of Defendants' products sold during the class
15 period.  (Walsh Objections at 2.)

16

17     **2.  Certification of a settlement class**

18     In its Preliminary Approval Order, the Court
19 provisionally certified a nationwide settlement class for
20 purposes of disseminating notice.  No arguments against
21 class certification have been raised, and the Court finds
22 that final certification of the class is appropriate.

23

24     The class members satisfy the applicable criteria for
25 class certification under Federal Rule of Civil Procedure
26 23(a) and 23(b)(3).  <u>See also</u> <u>Amchem Products, Inc. v.</u>
27 <u>Windsor</u>, 521 U.S. 591 (1997) (addressing class

28

1 certification for settlement purposes).  The numerosity

2 requirement is met based on the hundreds of thousands of

3 claims made in this case to date.  Fed. R. Civ. P.

4 23(a)(1); Hudgens Decl. ¶ 29.  The class members share

5 common issues of law and fact, including the content of

6 Airborne's packaging and its alleged deceptive nature.

7 Fed. R. Civ. P. 23(a)(2).  The named Plaintiff's claims,

8 arising from his use of Airborne as set forth in his

9 declaration, are typical of the claims that other class

10 members would raise.  Fed. R. Civ. P. 23(a)(3); Wilson

11 Decl.  Both the named Plaintiff and his counsel have

12 demonstrated that they will fairly and adequately

13 represent the interests of the class, by their vigorous

14 investigation and litigation of this case.  Fed. R. Civ.

15 P. 23(a)(4).  Finally, in light of the size of the class,

16 common issues predominate over class members' individual

17 issues, and resolution of the common claims in a class

18 action case provides a superior method of adjudication.

19 Fed. R. Civ. P. 23(b)(3).

20

21      Accordingly, the Court certifies the proposed class

22 for settlement purposes.

23 ///

24 ///

25 ///

26 ///

27 ///

28

1  **3.    Fairness, reasonableness, and adequacy of**

2  **settlement agreement**

3  In determining whether a settlement agreement's terms

4  are fair, reasonable, and adequate, courts balance

5  several factors, including:

6  the strength of plaintiffs' case; the

7  risk, expense, complexity, and likely

8  duration of further litigation; the risk

9  of maintaining class action status

10  throughout the trial; the amount offered

11  in settlement; the extent of discovery

12  completed, and the stage of the

13  proceedings; the experience and views of

14  counsel; the presence of a governmental

15  participant; and the reaction of the

16  class members to the proposed settlement.

17  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1291

18  (9th Cir. 1992).  The Ninth Circuit has recognized the

19  "overriding public interest in settling and quieting

20  litigation," which is "particularly true in class action

21  suits."  Van Bronkhorst v. Safeco Corp., 529 F.2d 943,

22  950 (9th Cir. 1976).  The Court must give "proper

23  deference to the private consensual decision of the

24  parties," Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027

25  (9th Cir. 1998), while also fulfilling its role as a

26  guardian for absent class members who will be bound by

27

28

1  the settlement.  <u>Ficalora v. Lockheed Cal. Co.</u>, 751 F.2d

2  995, 996 (9th Cir. 1985).

3

4      Based on the analysis of relevant factors set forth

5  below, the Court finds the parties' settlement agreement

6  to be fair, adequate, and reasonable.

7

8          **a.  Arms-length negotiations**

9      The Court finds that the settlement agreement is the

10  result of arms-length negotiations between experienced

11  counsel who thoroughly researched the legal issues and

12  understood the relevant facts.  As recounted by

13  Plaintiff's counsel, Jeffrey Fazio, in support of the

14  request for attorney's fees, it was not clear at the

15  outset that the parties would reach a settlement

16  agreement.  (Fazio Decl. ¶¶ 96-101, 142.)  In the period

17  between execution of a memorandum of understanding and

18  the completion of a final agreement, differences of

19  opinion arose that risked Defendants' rejection of the

20  proposed terms.  (<u>Id.</u> ¶¶ 150-51.)  The mediator who

21  presided over the parties' day-long session also

22  described the hard-fought nature of the negotiations.

23  (Fazio Decl. Ex. 2.)  The absence of collusion supports

24  approval of the settlement as fair, adequate, and

25  reasonable.

26  ///

27  ///

28

### b.   Strength of case, and expense and duration of further litigation

Though Plaintiff's counsel believe they could prevail on the merits at trial, they face some significant legal and procedural hurdles that could preclude a trial.  The issue of federal preemption, under the Food, Drug, and Cosmetic Act, remains in flux before appellate courts. (Settlement Approval Mot. at 12-13.)  The certification of a nationwide class bringing claims under California law would also have to be addressed.  Continuing with the litigation would require Plaintiff's counsel, on behalf of the class, to address complex legal and procedural issues without guarantee of success.  This further supports approval of the parties' settlement.

### c.   Extent of discovery completed

Defendants have produced some 600,000 documents, and Plaintiff's counsel also reviewed information concerning Airborne sales revenue in connection with the settlement negotiations.  (Settlement Approval Mot. at 15.) Plaintiff's counsel provided the revenue information to the Court, under seal, as part of the preliminary settlement approval process.  The discovery conducted supports a conclusion that the parties entered into the settlement agreement with enough information concerning the facts of the case to support a fair, adequate, and reasonable compromise.

### d.   Experience and views of counsel

Counsel for the class have established their experience in class action litigation, and their support of the settlement supports final approval.  (Fazio Decl. ¶ 25; Gardner Decl. ¶ 12; Harnett Decl. ¶¶ 14-18.)

### e.   Reaction of class members

The claims administrator has received 419,606 claims through May 25, 2008, with an aggregate face value of $21.7 million.  (Hudgens Decl. ¶ 29.)  More than 100,000 of these claims appear to have been made falsely, however, because they are based on the purchase of Airborne products that either were not on the market at the time of the claimed purchase, or were not available in the geographic area of the claimed purchase.  (Id. ¶¶ 23-26.)  An additional group of claims, approximately 40,000, request reimbursement for more than the six boxes of Airborne allowed by the settlement agreement without proofs of purchase.  (Id. ¶ 28.)  Though the claims administrator is still sorting out these issues, it has provided 282,717 as the total number of claims that have not been rejected and are not subject to follow-up auditing.  (Id. ¶ 29.)  When the $6.8 million value of the false claims is subtracted from the initial $21.7 million face value of the claims, the result is $14.9 million in claims made on the $23.25 million initial settlement fund.  (Id.)

1   The claims administrator has received 230 timely
2   requests to opt out of the settlement, and 2 requests
3   submitted after the May 12, 2008, deadline.  (<u>Id.</u> ¶ 17 &
4   Ex. D.)  The claims administrator also has received 17
5   objections submitted personally by potential class
6   members, who did not file their objections with the Court
7   as required by the Preliminary Approval Order.  Two
8   objectors have filed their objections with the Court.
9   (<u>Id.</u> ¶ 18 & Ex. E; Walsh Objections; Shapiro Objections)
10
11   In absolute numbers, the objections and number of
12   potential class members requesting to opt out of the suit
13   are small compared with the 282,717 class members who
14   have filed apparently valid claims to date.  Though these
15   numbers indicating support of the settlement by class
16   members weigh in favor of approval of the settlement, the
17   Court also considers the specific objections that have
18   been made.
19
20   **i.   Objections by potential class members**
21   **without counsel**
22   The majority of the 17 objections submitted by
23   potential class members address the filing of the
24   lawsuit, or the objector's support for Airborne, rather
25   than the fairness or adequacy of the settlement terms.
26   (Hudgens Decl. Ex. E.)  One objector, for example, wrote
27   a letter stating, "I object to this suit."  (<u>Id.</u> at 1.)
28

1  Another potential class member objected to the

2  "superfluous class action lawsuit." (*Id* at 3.)  The

3  Court therefore overrules all of the objections making

4  similar statements, (Hudgens Decl. Ex. E at 1-16), on the

5  ground that they do not object to the settlement terms,

6  and separately addresses the two remaining objections.

7

8     One of the two remaining objections, attached as page

9  17 to Exhibit E of Mr. Hudgens's declaration, does not

10  include the name of the objector.  Moreover, the

11  objections raised appear to be addressed adequately by

12  the settlement agreement and the parties.  The objector's

13  first concern that fraudulent claims may be filed,

14  because proofs of purchase are not required for up to six

15  boxes, has been addressed by the use of Rust Consulting,

16  an experienced claims administrator.  As set forth in Mr.

17  Hudgens's declaration, the claims administrator used its

18  experience in setting the available refund without proof

19  of purchase at six boxes while cognizant of the risk of

20  fraudulent claims.  Rust Consulting also has rejected and

21  audited apparently fraudulent claims and appears to be

22  reviewing the claims with appropriate rigor.  (*See*

23  Hudgens Decl. ¶¶ 23-26, 28.)  Airborne also has responded

24  to the objector's concern that he submitted his proofs of

25  purchase to Airborne for a rebate program, thereby

26  precluding him from using those proofs of purchase to

27  submit a claim to the settlement fund for more than six

28

1  boxes.  The objector, and others in the same position,
2  may obtain copies of their proofs of purchase from
3  Airborne, which has retained those documents.  (Pl.'s
4  Response at 5.)  The Court therefore overrules these
5  objections.

6

7     Another objector, Jarrod Joseph LaMothe, suggests
8  that the maximum recovery per claimant should be one
9  package of Airborne, since each package contains multiple
10 tablets.  (Hudgens Decl. Ex. E at 18.)  After purchasing
11 one package, a class member would be able to determine
12 whether he or she had been misled by any allegedly false
13 claims and could then cease using the product.  (<u>Id.</u>)
14 Mr. LaMothe argues that class members therefore should
15 not be reimbursed for more than one package of Airborne.
16 (<u>Id.</u>)  The Court overrules this objection.  The legal
17 remedies sought by Plaintiff in this case included
18 restitution, disgorgement, and punitive damages.  (SAC at
19 30.)  By entering into a settlement agreement to resolve
20 the claims of the SAC, the parties reasonably could have
21 used the purchase price of multiple boxes of Airborne as
22 a measuring stick to determine a fair settlement.  In
23 other words, the parties were not limited to a settlement
24 encompassing only the amount of Airborne a class member
25 may have been induced to purchase by allegedly misleading
26 claims.

27

28

**ii. Objections raised through counsel**

Objector Shapiro argues that the settlement is inadequate, because it does not provide for equitable relief and defers to government agencies on this issue. (Shapiro Objections at 2.)  The Court raised a similar concern during the preliminary settlement approval process, and has been satisfied that a release of claims on behalf of the class without obtaining equitable relief was reasonable.  Defendants represent that they are in the process of negotiating an agreement with the Federal Trade Commission that would include equitable relief. (Def.'s Brief at 1 n.1.)  Shapiro's objection on this ground therefore is overruled.[7]

The Court also overrules the objections filed by Objector Walsh, who argues that the settlement is inadequate in limiting recovery for class members without proofs of purchase to the price of six boxes of Airborne. (Walsh Objections at 1-2.)  This is essentially a dispute with the form of compromise Plaintiff and his counsel chose to accept by settling, and not a basis for deeming the settlement agreement's terms unfair or inadequate.

Finally, the Court finds the objections raised by Objector Fairbank to be without merit in this case.

_____

[7]Shapiro's remaining objection concerning the award of attorney's fees is addressed separately below.

1  Fairbank suggests that the settlement agreement should be
2  altered to (1) withhold part of the claims
3  administrator's fees until the distribution process is
4  completed, (2) withhold part of the fees awarded to
5  Plaintiff's counsel until the distribution process is
6  completed, and (3) require that Plaintiff's counsel post
7  a bond to ensure repayment of their fees should the
8  settlement agreement be rejected on appeal.  (Fairbank
9  Objections at 2-3.)  While such provisions are supported
10  by a practical concern for ensuring that all class
11  members are remunerated in a timely fashion, the terms of
12  the settlement agreement in this case adequately protect
13  the class members' interests.  For example, the agreement
14  provides that class counsel's fees will not be paid until
15  any appeals are resolved, unless such appeals concern
16  only the issues of attorneys' fees or Plaintiff's
17  incentive award.  (Settlement Agreement at 25-26, ¶ 8.)
18  In other words, class counsel will not receive their
19  attorneys' fees while the finality of the recovery to
20  class members remains in doubt.  In addition, the
21  declaration filed by a representative of the claims
22  administrator illustrates its diligence and good faith in
23  overseeing disbursement of settlement funds.  (See
24  Hudgens Decl.)  The Court thus overrules Fairbank's
25  objections.
26  ///
27  ///
28

1     In light of the factors set forth above supporting
2  final approval of the parties' settlement agreement, the
3  Court grants the Settlement Approval Motion.

4

5  **B.  Motion for Award of Attorney Fees and Litigation**
6       **Expenses**

7     Class counsel seek an award of $5,812,500 for
8  attorneys' fees and litigation expenses, which represents
9  the maximum amount the parties' settlement agreement
10  allowed them to request. (Fee Mem. P. & A. at 2:6-9.)
11  The amount represents 25 percent of the $23,250,000 that
12  Defendants initially must deposit into the settlement
13  fund. (Id.)

14

15     Plaintiff asserted claims under California law, and
16  California law also governs the award of attorneys' fees
17  here. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047
18  (9th Cir. 2002). California recognizes the common fund
19  doctrine for the award of attorneys' fees to a prevailing
20  plaintiff whose efforts result in creation of a fund
21  benefitting others. Serrano v. Priest, 20 Cal. 3d 25, 35
22  (1977). Under both California and Ninth Circuit
23  precedent, a court may exercise its discretion to award
24  attorneys' fees from a common fund by applying either the
25  lodestar method or the percentage-of-the-fund method.
26  Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224,
27  253 (2001); Fischel v. Equitable Life Assur. Soc'y of

28

1   U.S., 307 F.3d 997, 1006 (9th Cir. 2002) (citing

2   Vizcaino, 290 F.3d at 1047).   In support of their request

3   for fees amounting to 25 percent of the initial

4   settlement fund, Plaintiff's counsel cite Ninth Circuit

5   authority suggesting that the percentage method is

6   favored in common fund cases such as this one, where the

7   value of the benefit to the class is fixed.   (Fee Mem. P.

8   & A. at 7, 11.)

9

10      Here, the Court finds that the lodestar method and

11   application of a multiplier is a more reasonable approach

12   to the circumstances of the case.[8]   Plaintiff's counsel

13   settled the case relatively early in the litigation,

14   before seeking class certification and beginning

15   deposition discovery.   Though counsel emphasize that

16   600,000 pages of documents were produced by Defendants,

17   (Fee Mem. P. & A. at 14:18), the relatively modest

18   3,383.1 hours expended by Plaintiff's counsel, by the

19   standards of complex class action litigation, supports

20   the use of the lodestar method here to prevent a

21   "windfall" award.   See In re Washington Pub. Power Supply

22   Sys. Secs. Litig., 19 F.3d 1291, 1298 (9th Cir. 1994);

23   Vizcaino, 290 F.3d at 1050 (noting that where time spent

24   "is minimal, as in the case of an early settlement, the

25

26      [8]The Court's use of the lodestar method addresses one
of Objector Shapiro's objections.   The Court would have
27   found application of the lodestar method appropriate in
the absence of Shapiro's objections, and thus they are
28   overruled.

1  lodestar calculation may convince the court that a lower

2  percentage is reasonable").  The Court thus begins its

3  analysis with a calculation of the lodestar.

4

5      **1.   Lodestar amount**

6      To calculate the amount of attorney's fees under the

7  lodestar method, a court must "multiply the number of

8  hours reasonably expended by the attorney on the

9  litigation by a reasonable hourly rate."  McElwaine v. US

10 West, Inc., 176 F.3d 1167, 1173 (9th Cir. 1999); PLCM

11 Group v. Drexler, 22 Cal.4th 1084, 1095 (2000).

12

13     Plaintiff's counsel provided a lodestar amount as an

14 alternative to their preferred percentage method of

15 calculating attorneys' fees in this case.  (Fee Mem. P. &

16 A. at 22.)  Plaintiff has been represented by Jeffrey L.

17 Fazio and Dina E. Micheletti, who are partners in Fazio |

18 Micheletti LLP; Melissa M. Harnett, a partner in

19 Wasserman, Comden & Casselman L.L.P. ("WCC"); and Stephen

20 Gardner of the Center for Science in the Public Interest

21 ("CSPI").  In their declarations, Mr. Fazio, Ms. Harnett,

22 and Mr. Gardner have provided information concerning

23 their hourly rates and the number of hours billed to

24 date.

25

26     •   Mr. Fazio, a 1989 law graduate, states that his

27         2008 hourly rate is $575, and his partner, Ms.

28

Micheletti, a 1996 law graduate, bills an hourly
rate of $475.[9]  (Fazio Decl. ¶¶ 4, 184.)  Based
on 826.1 hours billed by Mr. Fazio and 657.8
hours billed by Ms. Micheletti, the lodestar
amount they provide for their firm's work is
$787,462.50.  (Fazio Decl. ¶ 191.)

- Ms. Harnett, a 1992 law graduate, states that
her hourly rate is $500.  (Harnett Decl. ¶ 35.)
She also has provided information concerning
other attorneys and paralegals at her firm who
worked on this case.  The rates requested for
these other attorneys and staff range from $100
for a law clerk, to $600 for a more senior
partner.  (Harnett Decl. ¶ 35.)  Based on
1,033.1 hours billed by Ms. Harnett, as well as
526.7 hours billed by others in her firm, Ms.
Harnett provides a lodestar amount for her firm
of $65,8275.50.  (Id.)

- Mr. Gardner, a 1975 law graduate, states that
his hourly rate is $700.  (Gardner Decl. ¶ 22.)
He has billed 404.7 hours to this case and
estimates that this figure will increase to 500
hours after the settlement agreement finally is
implemented.  (Id.)  He also estimates that
another lawyer in his office, Katherine

---

[9]Mr. Fazio has submitted a survey of hourly rates
showing that their requested rates are reasonable.
(Fazio Decl. ¶ 185 & Ex. 3.)

Campbell, a January 2007 law graduate, will spend 23.5 hours at an hourly rate of $270. (Id. ¶ 23.)  Mr. Gardner thus provides a lodestar amount of $356,245 for his office. (Id. ¶ 24.)

According to counsel's declarations, then, the total lodestar figure for all three firms is $1,802,083.

The Court finds that this amount -- roughly $1.8 million -- represents the upper limit of a reasonable attorneys' fee award under the lodestar method.  Based on its own observation of the conduct of this litigation, a reduction in the hours billed to date is warranted.  For example, it is unclear why counsel from all three law firms were necessary for prosecution of this case.  The attorney with the highest hourly rate, Stephen Gardner, is described as having expertise in areas such as food supplements and their regulation by federal authorities. (Fazio Decl. ¶¶ 32-33.)  He and his organization, CSPI, joined the litigation to provide their knowledge in these areas.  (Id. ¶ 33.)  While such specialized knowledge may have been helpful in Plaintiff's counsel's initial investigation of the case, it is unclear why such specialized knowledge has been necessary to Plaintiff's counsel's ongoing efforts to obtain final settlement approval and implement the settlement agreement.

1    Even if it was necessary or prudent for counsel from
2 all three firms to conduct the litigation, Plaintiff's
3 counsel have not established that the division of their
4 labor avoided duplication, or that the hours billed do
5 not include excessive time spent in conferences or
6 corresponding with one another.  As a result, even though
7 Plaintiff's counsel have not included time spent at the
8 final settlement approval hearing or time spent after the
9 hearing in their calculation of a lodestar amount, this
10 omission is balanced by the reductions the Court
11 certainly would have made to the hours billed to date.
12 (Fazio Decl. ¶¶ 189-190; Harnett Decl. ¶ 35.)  Mr. Fazio
13 estimates, based on his past experience, the additional
14 time Plaintiff's counsel will spend on this case to be
15 350 to 400 hours.  (Fazio Decl. ¶ 32.)  Moreover, the
16 Court deducts the additional hours Mr. Gardner estimates
17 he and another lawyer with his organization will spend on
18 the case, or 95.3 hours for him and 20 hours for
19 Katherine Campbell.  (Gardner Decl. ¶¶ 22-23.)  The Court
20 therefore fixes the lodestar attorneys' fees as follows:
21
22    •    Fazio | Micheletti LLP:   $  787,462.50
23    •    WCC:                      $  658,275.50
24    •    CSPI:                     $  284,235.00
25              **Total:        $1,729,974.00**
26 ///
27 ///
28

**2.   Lodestar multiplier**

Though Plaintiff's counsel have not made specific arguments in support of a multiplier for the lodestar amount, the Court finds their arguments concerning the reasonableness of their request for 25 percent of the settlement fund to apply here.   Specifically, Plaintiff's counsel argue that (1) their efforts produced "exceptional" and "extraordinary" results, (Fee Mem. P. & A. at 13-17), and (2) they capably dealt with complex issues and the risks presented by those issues, (<u>Id.</u> at 17-19).

The lodestar amount may be enhanced by application of a multiplier to account for the contingent nature of the fee award and the extent to which the litigation precluded counsel from pursuing other paid work. <u>Serrano</u>, 20 Cal. 3d at 49.   Though a multiplier may be applied where the litigation involved complex legal issues presented by skillful attorneys, such factors should not be considered where they are already encompassed in the calculation of the lodestar.   For example, the skill of the lawyers or the difficulty of the legal questions they faced "appear[] susceptible to improper double counting," because they are accounted for by a higher hourly rate and more attorney hours.   <u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1138-39 (2001).

1     Here, the Court finds that a multiplier of 2.0 would
2 reasonably account for the particular circumstances faced
3 by Plaintiff's counsel in this case.  The most persuasive
4 factor in setting this amount is the risk Plaintiff's
5 counsel faced that they would achieve no recovery, in
6 light of the legal questions concerning class
7 certification and possible federal preemption of their
8 claims.  (Fee Mem. P. & A. at 18-19.)  Another important
9 consideration is that Plaintiff's case may have been a
10 factor in a subsequent investigation by the Federal Trade
11 Commission and the attorneys general of many states.
12 (Fee Mem. P. & A. at 17.)  The hourly rates of
13 Plaintiff's counsel and the hours they billed adequately
14 account for their level of experience and the difficulty
15 of the issues they addressed, however.  The Court is not
16 persuaded that the "extraordinary" results obtained by
17 Plaintiff's counsel justifies a higher multiplier. Though
18 the result is "extraordinary" in terms of the total value
19 of the settlement fund, it is not apparent that those
20 funds will redress an injury keenly felt by class
21 members.  Several class members were compelled to write
22 letters objecting to the lawsuit itself, and, as
23 discussed above, the number of class members submitting
24 apparently valid claims to date will not deplete the
25 amounts in the settlement fund.
26 ///
27 ///
28

31

Applying such a multiplier to Plaintiff's counsel's lodestar calculation would result in an award of $3,459,946 in fees.  This amount represents 14.8 percent of the $23.25 million initial settlement fund, a percentage the Court also finds to be reasonable.

### 3.  Litigation expenses

The Court further awards the litigation expenses requested by Plaintiff's counsel, in the amounts of $8,458.64 to Fazio | Micheletti LLP, (Fazio Decl. ¶ 192); $20,993.58 to WCC, (Harnett Decl. ¶ 49); and $3,280.60 to CSPI, (Gardner Decl. ¶ 25.).[10]  The total amount awarded for litigation expenses is $32,732.82.

Accordingly, the Court grants Plaintiff's Fee Motion in part and awards $3,459,946 in attorneys' fees and $32,732.82 in litigation expenses.

## C.  Motion for Incentive Award to Plaintiff

Plaintiff David Wilson requests a $10,000 incentive award for his contributions as the named plaintiff in this case.  (Incentive Award Mot. at 1:1-3.)  As set forth in the parties' settlement agreement, any court-approved incentive award to Plaintiff would be paid by

---

[10]The amount awarded to Wasserman, Comden & Casselman, L.L.P., reflects the deduction of $2,089.37 in expenses described only as "Other Costs."  (Harnett Decl. ¶ 49.)

1  Defendants in addition to the amounts they already have

2  agreed to pay to settle this case.  (Id. at 1:6-9.)

3

4      The Court has discretion to grant an incentive award

5  to the class representative.  Van Vraken v. Atlantic

6  Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

7  Factors a court may consider in exercising its discretion

8  include:

9          1) the risk to the class representative in

10         commencing suit, both financial and otherwise;

11         2) the notoriety and personal difficulties

12         encountered by the class representative; 3)

13         the amount of time and effort spent by the

14         class representative; 4) the duration of the

15         litigation and; 5) the personal benefit (or

16         lack   thereof)   enjoyed   by   the   class

17         representative as a result of the litigation.

18  Id. (citations omitted).

19

20     The Court has reviewed and considered Plaintiff

21  Wilson's declaration, which describes how he came to be

22  involved in this case, the research he conducted before

23  and during the litigation, the time he spent reviewing

24  documents and conferring with counsel during the course

25  of the litigation, and the media attention he endured

26  after announcement of the settlement.  (Wilson Decl. ¶¶

27

28

                              33

1  3-9.)  Having done so, the Court grants an incentive

2  award of $2,500.

3

4     In reducing the requested amount of the incentive

5  award, the Court notes the low degree of risk undertaken

6  by Wilson in commencing the lawsuit, the fleeting nature

7  of the media attention he experienced, and the relatively

8  limited duration of the litigation, including the modest

9  55 hours he estimates he spent on the case.  (Wilson

10 Decl. ¶¶ 6-9.)  For example, Mr. Wilson was never deposed

11 and did not testify at a trial, in contrast with the

12 class representatives who have received incentive awards

13 in other cases.  <u>See</u> <u>Van Vraken</u>, 901 F. Supp. at 299-300

14 (awarding $50,000 to named plaintiff who was deposed

15 twice and testified at trial during litigation lasting

16 more than a decade); <u>In re Domestic Air Transportation</u>

17 <u>Antitrust Litig.</u>, 148 F.R.D. 297, 357-58 (N.D. Ga. 1993)

18 (awarding $2,500 to class representatives who produced

19 documents and $5,000 to those who were deposed); <u>see</u> <u>also</u>

20 <u>Cook v. Niedert</u>, 142 F.3d 1004, 1016 (7th Cir. 1998)

21 (upholding award of $25,000 to named plaintiff who risked

22 workplace retaliation and "spent hundreds of hours with

23 his attorneys").

24

25              **IV. CONCLUSION**

26     For the foregoing reasons, the Court GRANTS

27 Plaintiff's Motion for Final Approval of Settlement and

28

GRANTS in part Plaintiff's Motion for Attorneys' Fees
Litigation Expenses and Plaintiff's Motion for Incentive
Award to Plaintiff.   The parties shall submit a proposed
Judgment and Order of Dismissal forthwith.

Dated:  August 13, 2008        _____
                                        VIRGINIA A. PHILLIPS
                               United States District Judge